# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA MUZZI, | ) |
|     Plaintiff, | ) Civil Action No. 19-694 |
| v. | ) Judge Cathy Bissoon |
| CITIZENS FINANCIAL GROUP, INC., t/d/b/a CITIZENS BANK, N.A., | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

On June 14, 2019, Plaintiff Melinda Muzzi ("Plaintiff") filed a Complaint (hereinafter "Complaint," Doc. 1) against Defendant Citizens Bank, N.A. (hereinafter "Defendant") alleging discrimination under the Americans with Disabilities Act ("ADA"). On August 15, 2019, Defendant filed a Motion to Dismiss, (hereinafter "Motion to Dismiss," Doc. 3), and Plaintiff filed a Response in Opposition on September 11, 2019 (hereinafter "Response," Doc. 12). On September 16, 2019, Defendant filed a Reply in support its Motion to Dismiss, (hereinafter "Reply," Doc. 13).

After consideration of all briefing, Defendant's Motion to Dismiss will be granted.

### A. BACKGROUND

Plaintiff began working for Defendant in approximately 2008, and over the course of her employment held various positions, most recently as a "C2C senior specialist" and a "senior customer service representative teller." (Complaint at ¶ 9.) At the time she was hired, Plaintiff informed Defendant that she was a colon cancer survivor and that, as a result of her treatment for

that illness, "it was necessary that she be permitted to take frequent restroom breaks." (Id. at ¶ 11.)

For "approximately nine (9) years, Defendant accommodated Plaintiff's disability by permitting her to use the bathroom as necessary." (Id. at ¶ 12.) Then, at some point in October of 2017, Plaintiff avers that her manager "forced her to enter into an agreement" that she only use her lunch hour to "administer her medical needs, in this respect." (Id. at ¶ 13.) This "requirement" proved an "unworkable solution" for Plaintiff, and in April of 2018, she requested intermittent leave under the Family and Medical Leave Act ("FMLA") in order to accommodate her medical needs. (Id. at ¶¶ 14–15.)

After determining "FMLA leave would be insufficient," around June 14, 2018, Plaintiff made a "formal request for ADA accommodation requesting that she be returned to the earlier accommodation granted by the Defendant." (Id. at ¶ 16.) In response to her request, Plaintiff alleges Defendant offered her the "ability to use 30 minutes during the workday, which was taken from Plaintiff's one-hour lunch period" to use the bathroom and that Defendant "required" her to "e-mail her immediate supervisor if her bathroom needs were likely to, or did, exceed 60 minutes" per day. (Id. at ¶ 17.) Plaintiff alleges that no other employee of Defendant was required to use time from their lunch hour to use the bathroom, that no other employee must report their "bathroom habits" to a supervisor, and that she was required by Defendant to take these actions because of her disability. (Id. at ¶¶ 18–20.)

In light of the above, Plaintiff filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") around September 6, 2018 (hereinafter "First EEOC Charge," Doc. 3-1).[1] (Id. at ¶ 21.) The following month, she applied for short-term disability due to the "stress,

---

[1] The EEOC concluded its investigation as to the First EEOC Charge on April 17, 2019. (Complaint at ¶ 5.b.)

2

anxiety, depression, hunger, and increased bowel difficulty" she alleges the Defendant's actions caused her to experience. (Id. at ¶ 22.) At the same time, Plaintiff also "submitted numerous requests to amend the original accommodation" which were denied. (Id. at ¶ 23.) In February 2019, Plaintiff lost her FMLA protection, and she avers that her position was filled by a person without a disability. (Id. at ¶¶ 24–25.) Shortly thereafter, Plaintiff's request for a transfer was denied and her application for short-term disability was denied. (Id. at ¶¶ 26–27.)

Plaintiff then applied for another position with Defendant, senior customer service representative teller, a position which "would not have required Plaintiff to adhere to the unreasonable bathroom restrictions to which she had previously been subjected." (Id. at ¶ 28.) Around May 22, 2019, however, Plaintiff was "forced to resign from that position" because the conditions "exacerbated" her medical issues. Plaintiff believes Defendant retaliated against her for filing the First EEOC Charge and for requesting a reasonable accommodation. (Id. at ¶¶ 29–30.) Plaintiff filed another charge with the EEOC on June 12, 2019 (hereinafter "Second EEOC Charge," Doc. 3-2).[2]

### B. ANALYSIS

Defendant advances two arguments in its Motion to Dismiss. First, that part of Plaintiff's failure-to-accommodate claim is barred as untimely, and second, that she failed to administratively exhaust her retaliatory constructive discharge claim.[3] Each will be addressed in turn.[4]

---

[2] Copies of Plaintiff's EEOC charges were attached to Defendant's Motion to Dismiss, but may, as Defendant points out, be properly relied upon by the Court at this stage. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).
[3] The Title VII enforcement scheme is applicable to ADA claims. Williams v. East Orange Cmty. Charter Sch., 396 F. App'x 895, 897 (3d Cir. 2010).
[4] In Count III of her Complaint, Plaintiff brings a PHRA claim based on her ADA allegations in Counts I and II. The Court's rulings as to each of Defendant's arguments apply with equal force to her PHRA claim. (See also Brief in Support at 4 (arguing if claim is time-barred under ADA it

### A. Untimeliness of part of Plaintiff's failure-to-accommodate claim

The parties agree that the applicable statutory period for filing an administrative charge in this case is 300 days. 42 U.S.C. § 2000e–5(e)(1). Defendant argues that Plaintiff's claim that it "violated the ADA by rescinding a reasonable accommodation of unlimited restroom use" is time-barred. (Defendant's Brief in Support of Motion to Dismiss, hereinafter "Brief in Support," Doc. 4 at 7.) Defendant directs the Court to the date Plaintiff's First EEOC Charge was filed—September 6, 2018—and the date that she alleges her accommodation was rescinded—"in or about October, 2017"—and points out that those dates are more than 300 days apart. (Id. at 9 (The "adverse employment action happened *no less* than 310 days" before her First EEOC Charge.)). Thus, Plaintiff's ADA claim as to the alleged October 2017 rescission of her accommodation is barred. E.g., Mercer v. SEPTA, 608 F. App'x 60, 63 (3d Cir. 2015).

On the other hand, Plaintiff urges that Defendant "made an apparent error in its interpretation of the facts pled" in her Complaint and in her First EEOC Charge. (Response at 3.) Plaintiff argues that the operative action was taken on June 14, 2018, when "Plaintiff made a formal request for ADA accommodation requesting that she be returned to the earlier accommodation granted be the Defendant." (Id.; Complaint at ¶ 16.) As June 14, 2018 is clearly within the period she had to file a claim with the EEOC, Plaintiff says her claim should be permitted to proceed.

The Court finds no "interpretation" error by Defendant: what Plaintiff argues in her Response is directly contradicted by the plain meaning of the words in her Complaint. No interpretation is required. Plaintiff alleged that Defendant was aware of her disability and "accommodated" her needs for nine years. (E.g., Complaint at ¶¶ 11–12.) Plaintiff characterized

---

is also time-barred under PHRA); id. at 6 n.2 (Defendant noting it concurrently moves to dismiss Plaintiff's PHRA retaliation claim based on her related ADA claim for the same reasons).)

4

her request that she be permitted to use the bathroom whenever necessary as "the earlier accommodation" in both her First EEOC charge and her Complaint. (E.g., Complaint at ¶ 16; Doc. 3-1 at 2 ("[O]n or about June 14, 2018, I made a formal request for ADA accommodation, requesting that I be permitted to return to the earlier accommodation.").) Plaintiff needed to "file a claim with the EEOC within 300 days of the action complained of in order not to be time-barred on that claim." Mercer, 608 F. App'x at 63. Because she failed to do so, any claim she had based on this conduct is barred.

Moreover, the remainder of Plaintiff's argument in her Response is so convoluted that the Court has had trouble understanding if she opposes this aspect of Defendant's Motion at all. For instance, Plaintiff does not contest that the October 2017 rescission was a "discrete act" that constitutes an adverse employment action.[5] (Response at 4 ("Here, Defendant's October, 2017, act of requiring Plaintiff to use her lunch break to accommodate her bathroom needs was undoubtedly a discrete act.").) She urges that "the correct interpretation" of the facts is that "Plaintiff's ability to use the restroom without limitation was revoked in October, 2017." (Id.) This is a distinction without a difference. A rescission of an accommodation, like a denial of a reasonable accommodation request, is a discrete event that starts the 300-day clock for filing an administrative charge. Mercer, 608 F. App'x at 63. By Plaintiff's own "interpretation," Defendant is correct.

However, as the Court understands Plaintiff's pleading, there are other allegations that may constitute a failure to accommodate that appear in her Complaint and in her First EEOC Charge. These include Plaintiff's continued requests for different accommodation because her

---

[5] Plaintiff also says that a "more restrictive 'accommodation'" was put into place at the same time the "earlier accommodation" was revoked. (Complaint at ¶¶ 13, 14; Response at 4.) As these events, as pleaded by Plaintiff, both occurred in October 2017, any ADA claim as to the "more restrictive accommodation" also is time-barred.

5

medical needs were not being met and/or were being "exacerbated" by Defendant. See also
Colwell v. Rite Aid Corp., 602 F.3d 495, 504–05 (3d Cir. 2010) (failure to accommodate claims
include employer "fail[ure] to engage in good faith in the interactive process" of accommodating
an employee's disability). Defendant has not moved to dismiss these allegations and those
aspects of her claim are not alleged to be time-barred.[6] Therefore, Defendant's Motion to
Dismiss will be granted as to any of Plaintiff's allegations in October 2017 or earlier, and any
portion of Plaintiff's claims based upon that conduct by Defendant dismissed with prejudice.[7]

### B. Failure to exhaust

While Plaintiff failed to mention in her Complaint that she filed the Second EEOC
Charge, Defendant brought that charge to the Court's attention and argues that Plaintiff filed suit
in this court "ignoring her administrative exhaustion requirements" with respect to some of its
allegations. (Brief in Support at 4.) In particular, Defendant advances that Plaintiff's "claim of
retaliatory constructive discharge does not fall 'within the scope'" of either the prior First EEOC
charge or the investigation which arose out of that charge. (Id. at 10.) Defendant points out that
the EEOC closed its investigation into the First EEOC Charge on April 17, 2019, five weeks
before the alleged constructive discharge even occurred. (Id. at 11.)

In response, Plaintiff argues that the contents of Second EEOC Charge "are directly
related to the aftermath of Plaintiff's first EEOC charge." (Response at 6.) Plaintiff urges the
retaliatory constructive discharge claim could reasonably be expected to grow out of the First
EEOC Charge, and that if Plaintiff had been interviewed by the agency, she would have "told the

---

[6] Following the October 2017 rescission, the next act in Plaintiff's Complaint occurred in April of 2018, clearly within 300 days of the filing of the First EEOC Charge.
[7] Dismissal with prejudice is appropriate where claims are barred, and thus, amendment would be futile. Heine v. Bureau Chief Division of Fire and Safety, 765 F. App'x 816, 820–22 (3d Cir 2019).

6

administrative investigator about the allegations in question." (Id. at 7.) Thus, Plaintiff says, her First EEOC Charge encompasses all aspects of her Complaint.

The relevant test regarding administrative exhaustion is whether the acts alleged "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). This also includes "new acts which occurred during the pendency of the proceedings before the Commission." Ostapowicz v. Johnson Bronze, Co., 541 F.2d 394, 398 (3d Cir. 1976). The "legal analysis turns on whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." Kopko v. Lehigh Valley Health Network, 776 F. App'x 768, 773 (3d Cir. 2019); see also Waiters v. Parsons, 729 F.3d 233, 237 (3d Cir. 1984) (where "retaliation" is "core grievance" in administrative filing, subsequent action for retaliatory discharge was properly exhausted).

Up front, the Court notes that Plaintiff's failure to even mention the Second EEOC Charge is at best a strange oversight and at worst a deliberate concealment. Nonetheless, the Court has carefully reviewed Plaintiff's charges and finds the First EEOC Charge is entirely devoted to issues related to reasonable accommodation. There are no allegations of retaliation of any kind; rather, the thrust of the charge is the alleged inadequacies of Defendant's offered accommodations in meeting Plaintiff's actual needs. Given that, it is simply not reasonable to conclude that any claims for retaliation were within the scope of the EEOC's investigation. See Kopko, 776 F. App'x at 774 ("We have explicitly declined to adopt a rule that a plaintiff's allegation of discrimination in an administrative charge also per se exhausts any retaliation claim."); Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (where "no analogous language" to a legal claim appears in EEOC charge, claim has not been exhausted).

7

More to the point, Plaintiff's position appears to be that she has exhausted her alleged retaliatory constructive discharge because she would have told the EEOC if she had been asked about those allegations. (Response at 7 ("Moreover, evidence suggesting that the Plaintiff would have told the administrative investigator about the allegations in question if interviewed about her complaint suggest that a reasonable investigation would have uncovered the claim or claims.").) This makes no sense. How could Plaintiff have told the agency she was constructively discharged 5 weeks before that event took place? How could the scope of the EEOC investigation reasonably be expected to encompass an event occurring several weeks after the EEOC closed its investigation? New acts have to occur *during* the EEOC's investigation to properly be raised in a civil action. Ostapowicz, 541 F.2d at 398.

As her First EEOC Charge fails to suggest anything other than a failure to accommodate, her allegations of retaliatory constructive discharge have not been exhausted. Cf. Waiters, 729 F.3d at 237; see also Antol, 82 F.3d at 1295 (discussing Waiters and specifying where "core grievances" in the Complaint and the EEOC Charge are the same, remedies have been exhausted). Therefore, this aspect of her Complaint is dismissed without prejudice to refiling after the EEOC process is complete.[8]

## II. ORDER

Defendant's Motion to Dismiss (Doc. 3) is **GRANTED**. Plaintiff's time-barred allegations in Count I are **DISMISSED WITH PREJUDICE**, and her allegations in Count II of

---

[8] As Plaintiff's Second EEOC Charge was filed on June 12, 2019, the agency has been obliged to issue a Right to Sue Notice for quite some time, if Plaintiff were to request it. 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28(a). If she had, it would have rendered this portion of Defendant's Motion to Dismiss moot.

retaliatory constructive discharge, as detailed in her Second EEOC Charge, are **DISMISSED WITHOUT PREJUDICE** to refiling after exhaustion of administrative remedies.

    IT IS SO ORDERED.

March 3, 2020                                     s\Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record